**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

MICHAEL DERRICK WILLIAMS,

     Petitioner,

v.                           Civil Action No. 3:13CV190

DIRECTOR FOR THE DEPT. OF CORRECTIONS,

     Respondent.

**MEMORANDUM OPINION**

Michael Derrick Williams, a Virginia prisoner proceeding pro se, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition"). Respondent has moved to dismiss and provided appropriate Roseboro[1] notice. Williams has responded. The matter is ripe for disposition.

**I. PROCEDURAL HISTORY**

A grand jury returned an indictment charging Williams with two counts of forcible sodomy, in violation of section 18.2-67.1 of the Virginia Code,[2] and one count of rape in violation of

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[2] That statute provides, in relevant part:

    A. An accused shall be guilty of forcible sodomy if he or she engages in cunnilingus, fellatio, anilingus, or anal intercourse with a complaining witness whether or not his or her spouse, or causes a complaining witness, whether or not his or her spouse, to engage in such acts with any other person, and . . . [t]he act is accomplished against the will

Section 18.2-61 of the Virginia Code.[3]   Indictment at 1, Commonwealth v. Williams, No. CR10000177-00 (Va. Cir. Ct. Apr. 20, 2010); Indictment at 1, Williams, No. CR10000178-00 (Va. Cir. Ct. Apr. 20, 2010); Indictment at 1, Williams, No. CR10000179-00 (Va. Cir. Ct. Apr. 20, 2010.)   Due to the successful efforts of Williams's counsel, the Commonwealth agreed to amend the Indictments for forcible sodomy to the lesser offenses of aggravated sexual battery, in violation of

---

of the complaining witness, by force, threat or intimidation of or against the complaining witness or another person . . . .
      B.   Forcible sodomy is a felony punishable by confinement in a state correctional facility for life or for any term not less than five years . . . .

Va. Code Ann. § 18.2-67.1(A)(2) & (B) (West 2010).

[3] That statute provides, in relevant part:

      A.   If any person has sexual intercourse with a complaining witness whether or not his or her spouse, or causes a complaining witness, whether or not his or her spouse, to engage in sexual intercourse with any other person and such act is accomplished (i) against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person . . . he or she shall be guilty of rape.
      B.   A violation of this section shall be punishable, in the discretion of the court or jury, by confinement in a state correctional facility for life or for any term not less than five years . . . .

Va. Code Ann. § 18.2-61(A)(i) & (B) (West 2010).

section 18.2-67.3 of the Virginia Code,[4] agreed that a fifteen-year active term for imprisonment "[was] appropriate" in exchange of Williams's <u>Alford</u> plea to those counts, and agreed to nolle prosse the rape charge. Plea Agreement at 3, <u>Williams</u>, CR10000178-00 & CR10000179-00 (Va. Cir. Ct. entered Dec. 7, 2010); (Dec 7. 2010 Tr. 3-7, 20).

On December 7, 2010, Williams entered an <u>Alford</u>[5] plea of guilty pursuant to a written plea agreement to two counts of aggravated sexual battery. Plea Agreement at 1-7, <u>Williams</u>, CR10000178-00 & CR10000179-00 (Va. Cir. Ct. entered Dec. 7, 2010); <u>Alford</u> Plea to a Felony at 1-2, <u>Williams</u>, CR10000178-00 & CR10000179-00 (Va. Cir. Ct. entered Dec. 7, 2010). The Circuit Court sentenced Williams to a total of forty years of incarceration with twenty-five years suspended based upon the

---

[4] That statute provides, in relevant part:

> A.  An accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he act is accomplished against the will of the complaining witness by force, threat or intimidation, and . . . [t]he accused causes serious bodily or mental injury to the complaining witness . . . .
> B.  Aggravated sexual battery is a felony punishable by confinement in a state correctional facility for a term of not less than one nor more than 20 years . . . .

Va. Code Ann. § 18.2-67.3(A)(4)(b) & (B) (2010).

[5] <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970).

terms of the Plea Agreement. <u>Williams</u>, CR10000178-00 & CR10000179-00, at 2 (Va. Cir. Ct. Dec. 7, 2010).

Williams appealed. Appellate counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967) raising a claim of trial court error and Williams filed several <u>pro se</u> petitions raising three additional claims. Petition for Appeal at 3, <u>Williams v. Commonwealth</u>, No. 2620-10-2 (Va. Ct. App. filed Apr. 11, 2011); <u>see</u> Supplemental Petitions for Appeal, <u>Williams</u>, No. 2620-10-2 (Va. Ct. App. filed Apr. 28, May 10, 18, 2011). The Court of Appeals of Virginia denied Williams's petitions for appeal. <u>Williams v. Commonwealth</u>, No. 2620-10-2, at 1-3 (Va. Ct. App. Oct. 20, 2011.)

The Supreme Court of Virginia refused in part, and dismissed in part, Williams's subsequent appeal. <u>Williams v. Commonwealth</u>, No. 112042, at 1 (Va. June 4, 2012).

Williams filed a petition for a writ of habeas corpus in the Supreme Court of Virginia raising similar claims as in the instant § 2254 Petition. <u>See</u> Petition for Writ of Habeas Corpus at 1, <u>Williams v. Dir. of the Dep't of Corr.</u>, No. 121042 (Va. filed June 20, 2012.) The Supreme Court of Virginia dismissed the petition. <u>Williams v. Dir. of the Dep't of Corr.</u>, No. 121042, at 17 (Va. Jan. 11, 2013.)

## II.  GROUNDS FOR RELIEF

Williams raises ninety-seven "briefs" or grounds for relief in his Writ of Habeas Corpus Petition Ground and Briefs Document ("Br. Supp. § 2254 Pet.," ECF No. 1-1).  Due to the repetitive and voluminous nature of Williams's "briefs," the Court combines certain "briefs" together into "Claims."[6]  Williams first argues that counsel rendered ineffective assistance based on the following Claims:

One:         Counsel failed to move for a continuance at the plea hearing and failed to demand that the Commonwealth provide complete medical records of the victim which would have impeached the victim's testimony. (Briefs (1) and (87).)

Two:         Counsel failed to object to the Commonwealth's summary of the facts at the plea hearing as it conflicted with the victim's prior statements. (Briefs (2), (18), and (63).)

Three:       Counsel failed to file a certificate of analysis notifying the Circuit Court and the Commonwealth that it intended to introduce evidence of the victim's medical records.  (Briefs (3) and (22).)

Four:        Counsel failed to file a certificate of analysis notifying the trial court and the Commonwealth that he intended to introduce Williams's and the victim's cell phone records into evidence which would have impeached the victim's testimony. (Briefs (4) and (5).)

Five:        Counsel failed to compel the hospital to produce the victim's records, which the Commonwealth subpoenaed, but were not timely produced (Briefs (6), (7), (10), (13), (64), (65), (77), (78),

---

[6] Given the multiplicity of arguments in Williams's "briefs," some "briefs" are included in more than one Claim.

(79), and (89)) and failed to subpoena the records himself. (Brief (75).)

Six:         Counsel failed to interview and subpoena certain witnesses who would have impeached the victim. (Briefs (8), (21), (24), (25), (28), (29), and (30).)

Seven:       Counsel failed to inform Williams that the hospital produced the victim's medical records. (Brief (9).)

Eight:       Counsel failed to object or move to dismiss the indictments based upon the victim's inconsistent statements (Briefs (11), (20), (72), and (82)) and based on the Commonwealth's failure to produce DNA and medical records. (Briefs (39), (40), (41), (42), (44), (45), (46), and (47).)

Nine:        Counsel failed to respond to Williams's request to inspect the materials in his case or visit him. (Brief (12).)

Ten:         Counsel failed to compel the Commonwealth to produce the complete sexual assault examiner's report. (Brief (14).)

Eleven:      Counsel failed to challenge the sufficiency of the evidence. (Brief (15).)

Twelve:      Counsel failed to move to withdraw Williams's Alford plea based on the Commonwealth's failure to proffer a sufficient factual basis for his plea. (Briefs (16), (18), (57), (58), (76), (81), (86), and (87).)

Thirteen:    Counsel failed to argue that two "continuances should not be charged to the defense for speedy trial purposes because it was the discovery issue and not the defense issue in not getting the alleged victim's medical records . . . ." (Br. Supp. § 2254 Pet. 7 (Brief (17).)

Fourteen:    Counsel failed to investigate the criminal history of the victim or her child's father. (Brief (19).)

Fifteen:        Counsel failed to object when the Commonwealth
                informed the Court at the plea hearing that he
                did not have the victim's entire medical report.
                (Brief (23).)

Sixteen:        Counsel deficiently advised Williams to plead
                guilty in light of the favorable evidence in his
                defense. (Brief (26).)

Seventeen:      Counsel failed to obtain and admit into evidence
                Williams's and the victim's cell phone records
                which would have demonstrated that he was sending
                text messages and was not at the victim's home at
                the time she claimed she was raped. (Briefs
                (27), (66), (67), (68).)

Eighteen:       Counsel failed to provide Williams with the jury
                instructions for the original charges against him
                before advising him to plead guilty. (Brief
                (38).)

Nineteen:       Counsel failed "to file a motion for perjury when
                the alleged victim's medical records were
                material and exculpatory in nature . . . ." (Br.
                Supp. § 2254 Pet. 16 (Brief 43).)

Twenty:         Williams's plea was unlawfully induced and
                involuntary because counsel failed to disclose or
                have the Commonwealth disclose the contents of
                the victim's medical records to Williams or the
                Circuit Court. (Briefs (48), (57), (60), (69),
                (70), (85), and (91).)

Twenty-One:     Counsel failed to file an appeal after Williams
                instructed him to do so. (Brief (49).)

Twenty-Two:     Counsel failed to move to dismiss the charges due
                to speedy trial violations. (Briefs (50), (51),
                (52), and (61).)

Twenty-Three    Counsel failed to object to the Commonwealth's
                proffer at the plea hearing to the results of the
                victim's DNA test as inadmissible without
                testimony from the person who conducted the test.
                (Brief (59).)

Twenty-Four:    Counsel failed to file a motion to withdraw
                Williams's _Alford_ plea based on the exculpatory
                nature of the victim's medical records. (Briefs
                (62) and (84).)

Twenty-Five:    Counsel failed to conduct a reasonable pre-trial
                investigation of exculpatory evidence, failed to
                file exhibits before trial, and failed to prepare
                a defense forcing Williams to enter _Alford_ plea.
                (Briefs (71), (74), (88), and (94).)

Twenty-Six:     Counsel failed to file notice that he intended to
                file a Motion for an Evidentiary Hearing.
                (Briefs (73) and (74).)

Twenty-Seven:   Counsel failed to move for summary judgment based
                on the Commonwealth's failure to produce the
                victim's medical records. (Brief (83).)

Twenty-Eight:   Counsel's cumulative deficient actions prejudiced
                Williams. (Brief (95).)

Twenty-Nine:    Counsel failed to introduce evidence supporting
                Williams's contention that sexual abuse could not
                have occurred under the circumstances. (Brief
                (97).)

        Williams also argues the following:

Thirty:         The Commonwealth failed to disclose favorable
                evidence in violation of _Brady v. Maryland_, 373
                U.S. 83 (1963) (Briefs (31), (35), (47), (55),
                (93) and (96)).

Thirty-One:     The Circuit Court expressed doubt about the
                verdict when he stated that "he 'thinks' this is
                a reasonable deposition [sic] to accept Alford
                Plea." (Br. Supp. § 2254 Pet. 13 (Brief (32).)

Thirty-Two:     The Circuit Court violated Williams's speedy
                trial rights. (Brief (33), (53), and (90).)

Thirty-Three:   The Commonwealth failed to prove his guilt beyond
                a reasonable doubt and the Circuit Court accepted
                an _Alford_ plea "without rooted facts." (Br.
                Supp. § 2254 Pet. 13 (Briefs (34) and (80).)

Thirty-Four:     The grand jury indictments were unconstitutional because no factual evidence existed to support the charges. (Brief (36).)

Thirty-Five:     "Conviction obtained by entering an Alford Plea agreement unintentionally." (Br. Supp. § 2254 Pet. 14 (Brief (37).) Williams misunderstood whether he waived his right to appeal the sufficiency of the evidence.

Thirty-Six:      The Commonwealth engaged in prosecutorial misconduct by knowingly presenting false testimony in presenting the factual basis for the plea. (Briefs (54) and (92).)

Thirty-Seven:    The Circuit Court failed to hold the hospital in contempt of court for failing to honor the subpoena of the victim's medical records. (Brief (89).)

Thirty-Eight:    The Commonwealth violated Williams's due process rights when it failed to prove every element of the crimes. (Brief (56).)

## III. APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C.

§ 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).[7]

## IV. GUILTY PLEA PROCEEDINGS AND FACTUAL BASIS FOR PLEA

Because Williams's claims of ineffective assistance of counsel stem from deficiencies occurring before and during the plea proceedings, it is necessary to recite the facts from those proceedings. As reflected below, contrary to his current protestations, the evidence of Williams's guilt was compelling, and Williams entered his plea knowingly and voluntarily.

---

[7] In light of the foregoing statutory structure, the findings of the Virginia courts figure prominently in this Court's opinion.

### A.   <u>Alford</u> Plea

On the day of trial, Williams pled not guilty to the two forcible sodomy counts and guilty to the two lesser counts of aggravated sexual battery.[8]   (Dec. 7, 2010 Tr. 4-7, 15.)   The Court explained that Williams faced up to life in prison on the rape and sodomy counts, and up to twenty years in prison on the aggravated sexual battery counts.   (Dec. 7, 2010 Tr. 7-8.)   At the beginning of the plea hearing, the Circuit Court emphasized that, before accepting the plea, it wanted to ensure that Williams's <u>Alford</u> plea was voluntary and that Williams understood the charges against him and the rights he was giving up by entering the plea.   (Dec. 7, 2010 Tr. 9.)   The Circuit Court explained that: "[W]hen we finish this morning, if I accept this plea, this case is going to be over."   (Dec. 7, 2010 Tr. 9.)   Thereafter, hypothesizing as to any future conversations Williams might have with his attorney about challenging his plea, the Court stated:

> There is no, Mr. Thomas, [9] I want to do this all over again; Mr. Thomas, I think I did the wrong thing on December 7th; let's go back and undo it all. We're not going to do that. That is not going to happen. I will not listen to you absent something like a bombshell or an earthquake any more than I would

---

[8] The Circuit Court explained that it refused to allow the Commonwealth to amend the Indictments until after it accepted Williams's guilty pleas.   (Dec. 7, 2010 Tr. 4.)

[9] H. Evans Thomas represented Williams in the Circuit Court proceedings.   (<u>See</u> Dec. 7, 2010 Tr. 2.)

> listen to [the Commonwealth] a week or two from now
> saying, the State feels like we made a mistake . . . .
> We're not going to do that.

(Dec. 7, 2010 Tr. 9-10.) Williams agreed that he understood the charges against him and the elements that the Commonwealth would need to prove to find him guilty of aggravated sexual battery. (Dec. 7, 2010 Tr. 11.) Williams agreed that he had discussed the case with his counsel around twelve times for a total period of about ten hours. (Dec. 7. 2010 Tr. 12-13.) Williams affirmed that counsel had answered all of his questions and that he had enough time to decide whether or not to plead guilty or not guilty. (Dec. 7, 2010 Tr. 13-14.) Williams agreed that no one had forced him to plead guilty or threatened him and that he understood his constitutional right to a trial by jury. (Dec. 7, 2010 Tr. 15.)

The Circuit Court explained that, if Williams wanted a jury trial, the jury was present, and, "if there is any uncertainty or I don't understand what you're telling me or I think that you're trying to stand on one foot and then the other foot, then we'll call the jury in to proceed on a not guilty plea. Do you understand that?" (Dec. 7, 2010 Tr. 16.) Williams answered in the affirmative. (Dec. 7, 2010 Tr. 16.) Williams then agreed that he had fully discussed his right to trial by jury with counsel, had heard the evidence against him at the preliminary hearing, and that he had "decided that it [was] in [his] best

interests to plead guilty . . . pursuant to the plea agreement[.]" (Dec. 7, 2010 Tr. 16.)

Williams stated that he signed the Alford Plea to a Felony document after reading and understanding it, and he agreed that it contained accurate information. (Dec. 7, 2010 Tr. 17.) Williams also acknowledged that he stipulated to the following facts:

> 1.   On or about September 8, 2009, the Defendant did unlawfully and feloniously sexually abuse C.W. by intentionally touching her genitalia, against his/her will and by the use of force, threat, or intimidation and causing her serious mental injury in violation of Section 18.2-67.3 of the Code of Virginia (1950) as amended; and
> 2.   On or about September 8, 2009, the Defendant did unlawfully and feloniously abuse C.W. by intentionally touching her buttocks, against his/her will and by the use of force, threat, or intimidation and causing her serious mental injury in violation of Section 18.2-67.3 of the Code of Virginia (1950) as amended.

Stipulation at 1, Williams v. Commonwealth, CR10000178-00 & CR10000179-00 (Va. Cir. Ct. entered Dec. 7, 2010); (Dec. 7, 2010 Tr. 17-18).

Williams acknowledged that he read, signed, and understood the written Plea Agreement. (Dec. 7, 2010 Tr. 19-20.) Williams agreed that he understood that a count of aggravated sexual battery carried a sentence of up to twenty years in prison. (Dec. 7, 2010 Tr. 20.) In the Plea Agreement, the Commonwealth "agree[d] that specific sentences" of twenty years with five

years suspended on the first count, and, twenty years with twenty years suspended on the second count "[were] appropriate to the disposition of these cases." Plea Agreement at 3, Williams v. Commonwealth, CR10000178-00, CR10000179-00 (Va. Cir. Ct. entered Dec. 7, 2010). Williams agreed that pursuant to the Plea Agreement, he understood that he would serve an active term of fifteen years if the Circuit Court accepted the Alford plea. (Dec. 7, 2010 Tr. 20-21.)

Williams also affirmed that he understood that, by pleading guilty he gave up any defenses to the charges, and he agreed that the evidence was sufficient to prove his guilt of two counts of aggravated sexual battery. (Dec. 7, 2010 Tr. 22-23.) Williams agreed that he "[did] not wish to dispute before this jury the allegations of the State that you raped this woman and that you committed forcible sodomy twice on her? You don't wish to dispute that by pleading guilty to two lesser offenses, correct?" (Dec. 7, 2010 Tr. 23.) Williams also affirmed that he understood that by pleading guilty he waived his right to appeal. (Dec. 7, 2010 Tr. 23-24.) The Circuit Court explained: "So if I accept this plea agreement today and you walk out of here with 40 years with 25 suspended, the case is all over and you can't [say] . . . I want to appeal what the Judge did on December 7th? There is no appeal. Do you understand that?" (Dec. 7, 2010 Tr. 23-24.) Williams agreed he understood. (Dec.

14

7, 2010 Tr. 24.)  Williams also agreed that he was satisfied by the services rendered by his counsel.  (Dec. 7, 2010 Tr. 25-26.)

As a summary of the evidence to support the amended charges, the Commonwealth offered the following facts that would support the lesser-included offenses of aggravated sexual battery, with the Court's additional questioning:

> These offenses occurred on or about the 8th day of September, 2009.  On that date [the victim] was present at her residence at 202-K Park View Gardens located here in Farmville in Prince Edward County.
> The defendant Michael Derrick Williams came by her house that day visiting her.  While he was there he spoke to her for some period of time and then proceeded to talk to her in a way that she was uncomfortable.  She asked him to leave, but he didn't.
> He then began to hold her down and touched her genitalia.  It was against her will.  He also then touched her buttocks by holding her down.  It was against her will.  As a result of that she has suffered severe injury, mental injury, emotional injury from those incidents.  Judge, he did this with the intent to sexually arouse or gratify . . . .
> THE COURT:     What about the sexual intercourse? I didn't hear you say anything about having sex with her?
> MR. BUTLER:     Yes, sir.  I was summarizing as to the aggravated sexual battery charges.
> THE COURT:     But that was part of the case, though.
> MR. BUTLER:     Yes, sir.
> THE COURT:     So you did have evidence that he had sex, also, with her?
> MR. BUTLER:     That's correct sir.
>    . . . .
> THE COURT:     How well were they known to each other?
> MR. BUTLER:     They know each other quite well, You Honor.  In fact, there is a familial relationship. They are cousins, probably second cousins . . . .
>    . . . .

THE COURT:      They never dated or anything?  No previous relationship?

MR. BUTLER:     No, sir.

. . . .

THE COURT:      Go back to the way it started out.  Was this at her house?

MR. BUTLER:     Yes, sir, it was.

THE COURT:      And he came to her house for what purpose?

MR. BUTLER:     Just to talk.

. . . .

MR. BUTLER:     She is the only adult that resides there.  Her son lives there with her.

THE COURT:      Was this during the day?

MR. BUTLER:     Yes, sir, it was.

THE COURT:      Daylight hours?

THE COURT:      Yes, sir, approximately 2:30 to 3:00 o'clock.

. . . .

THE COURT:      Would the State have any evidence other than the victim's statement?  You got scientific evidence?

MR. BUTLER:     We did, sir.

THE COURT:      To what extent?

MR. BUTLER:     There were [sic] sexual assault nurse exam was performed.  The sexual assault nurse examiner found that there was an indication of blunt trauma but could not identify whether or not it was consensual or nonconsensual, could not testify as to exactly what caused the trauma.  During the sexual assault exam the nurse examiner collected vaginal and anal rectal swabs from the victim.  DNA was recoverable from the vaginal swabs, indicated that the defendant was the perpetrator.

THE COURT:      So you've got DNA in the victim's body of the defendant?

MR. BUTLER:     Correct, sir.

THE COURT:      Anything else that would lead to the plea agreement that you would want to apprise me of?

MR. BUTLER:     Your honor, there was some problems with the maintenance of the records of the sexual assault nurse exam.  We do not have the entire report.  The sexual assault nurse examiner did not have an independent recollection of the exam, and we were only able to find the majority of the report.  After reviewing the report she does have a better

16

recollection of it; however, that was an issue with regard to this case.

 THE COURT:   So your primary evidence would be the victim's statement and the DNA?

 THE COURT:   Yes, sir.

(Dec. 7, 2010 Tr. 26-32.)   In response to the evidence, defense

counsel stated:

 Your honor, listening to the Commonwealth's summation and having been over this I think excessively thoroughly myself with the client, we agree that that would be the evidence and there is [sic] also problems with the Commonwealth's case.

 As your Honor heard, one of the problems with the defendant's case is, number one, there is DNA which would be offered as evidence, which given the correlation there is no reason to not believe it was my client's DNA that was found inside the lips of her vagina, Judge.

 Also, one of the problems that the defendant would have in this case is inconsistent statements by my client to the officer, including his first statement and second statement to the officer, including written letters he sent to Investigator Hogan after he had been incarcerated.

 THE COURT:   What is the gist of those?

 MR. THOMAS: . . . it was I did not have sex with that woman but we did do something.  Maybe it doesn't include sex as in terms of actual sexual intercourse, putting my penis inside her, but we fooled around and we messed around and I did ejaculate on her.

 THE COURT:   All consensual.  That was the first statement.

 MR. THOMAS:   No, the first statement was we didn't have sex at all.

 THE COURT:   And the second statement?

 MR. THOMAS:   It was not sex, I did not have intercourse with her, I did not anally penetrate her or have oral sex with her, but I did mess around and it was consensual.  So there is a problem with that. And, as you heard, the problem is my client has six prior felonies as well which is a question of credibility.

> Additionally, Your Honor, were he to be even
> convicted of one count of the original charges to
> which the Court alluded to that each one carries the
> possibility of life, the fact that he has only
> recently gotten out of the penitentiary for rape and
> sodomy, Judge, would likely lead to a long sentence.
> And we've been over those guidelines, Judge,
> months and months ago and went over them again more
> recently. We have been over the guidelines
> exceptionally thoroughly, and those other guidelines
> at age 40 are no different than what the jury could
> possibly have given him on any of those charges which
> is life.

(Dec. 7, 2010 Tr. 33-35.)  The Circuit Court then noted "I think

this disposition is reasonable."  (Dec. 7. 2010 Tr. 35.)  The

Circuit Court imposed the sentence agreed to in the plea

agreement of a total active term of fifteen years of

imprisonment.  (Dec. 7, 2010 Tr. 35-36.)  The Circuit Court

accepted Williams's plea, and found him guilty of two counts of

aggravated sexual battery.  (Dec. 7, 2010 Tr. 36.)

### B.  Commonwealth's Evidence For Trial

If the case had proceeded to a jury trial, the Commonwealth

possessed compelling evidence of Williams's guilt of rape and

forcible sodomy.  First, the victim would have testified to the

following, as reflected in her statement to the police

approximately one and a half hours after the assault:

> Mr. Williams put his right arm around her head and
> placed his hand over her mouth.  He then came around
> the corner of the couch and pushed his forearm against
> her chest while still holding his hand over her
> mouth. . . .  He then used his other hand to pull her
> pants and panties off and lifted her leg into the air,
> pushing against it.  [The victim] stated she told him,

"No. Stop. You are my cousin.  Why are you doing this? My little boy is sitting right here . . . [.]"  His only reply was to laugh and say "hush" and "sshh."

[The victim] then stated that while Mr. Williams was standing flat footed on the floor, he bent over, still holding her right leg in the air and holding his hand over her mouth and pushing his forearm against her chest, and performed oral sex on [her].  [The victim] stated she tried to move away and to kick his leg, but was not successful.  Mr. Williams then pulled his pants and boxers down to his knees and penetrated her vagina with his penis.  [The victim] stated she attempted to push him off of her but he was so tall, she couldn't get him off.  (Mr. Williams is 6' 6" tall.)  [The victim] stated he then "rolls me over to my side trying to get it in my butt."  He eventually pushed her onto her stomach and finally "worked" his penis into her anus.  [The victim] stated that he did not use a condom and he ejaculated on her anus.  He wiped her off with what she described to be a burgundy colored cloth.  She did not know where the cloth came from and assumed he brought it with him.  She also stated that he took the cloth with him when he left. Before leaving, Mr. Williams told her not to tell anybody and also said "he always wanted to do that."

(Br. Supp. § 2254 Pet. Ex. 15, at 1-2.)

After Williams left her home, the victim called her child's father, L.E., who she had been speaking with on the phone when Williams first arrived at her house.  (Id. at 2.)  The victim explained that she was ashamed to tell L.E. what had happened. (Id.)  However, because the victim was crying, L.E. knew something was wrong, so she finally told him she had been raped. (Id.)  The victim then went to the hospital where the sexual assault nurse examiner performed an examination and PERK test. (Id.)

Police also interviewed L.E., who stated that he had been speaking with the victim on the phone when Williams arrived at her house and also spoke with Williams. (Id.) He stated that he "heard [the victim] tell Michael Williams, 'No. Stop. We're cousins' and then the phone hung up. L.E. tried to call back repeatedly, but no one answered." (Id.) When the victim finally answered, she told L.E. that Williams raped her. (Id.) L.E. told the police officer that the victim told him that Williams "forced his way on her. He put his hand on her mouth, took the house phone off the hook, and she couldn't get to her cell phone because he still had it. He told her he always wanted to do this." (Id.)

The hospital produced and filed the victim's medical records with the Circuit Court on September 3, 2010. Sealed Medical Records, Williams v. Commonwealth, CR10000178-00 & CR10000179-00 (Va. Cir. Ct. Sept. 3, 2010). The medical report corroborated the victim's statement that Williams raped and sodomized her. The Forensic Nurse Examiner noted no body surface injuries but noted that the patient was "TEARFUL/SOBBING" and was "ANGRY." (Br. Supp. § 2254 Pet. Ex. 2, at 1); see Sealed Medical Records, Williams, CR10000178-00 & CR10000179-00 (Va. Cir. Ct. Sept. 3, 2010). The "EMERGENCY PHYSICIAN RECORD Alleged Sexual Assault" form noted that the victim stated that the mechanisms of trauma were "vaginal

20

penetration" and "rectal penetration" and she reported rectal pain. (Br. Supp. § 2254 Pet. Ex. 3, at 2.) The hospital collected vaginal and anal rectal samples from the victim. The DNA analysis of those samples, filed with the Circuit Court on April 30, 2010, confirmed that the DNA belonged to Williams. (See id. Ex 1, at 1.)

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL

### A.   Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In

analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.[10]

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Any assertion by Williams that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. See United States v. Mora-Gomez, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing Hill, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding a petitioner's plea,

---

[10] In Strickland, the Supreme Court made clear that no need exists for the Court to address counsel's purported deficiency, and that directive has particular relevance here. 466 U.S. at 694. Williams lists scores of critiques of counsel's performance in every facet of his representation. By addressing only prejudice, the Court by no means finds that counsel performed deficiently. To the contrary, the record reflects that counsel negotiated an extraordinary plea agreement and sentence in light of the pending charges and the evidence in support of those charges.

including the likelihood of conviction and any potential sentencing benefit to pleading guilty. See id. at 369-70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

## B.  Pre-Trial Claims[11]

The majority of Williams's claims of ineffective assistance of counsel derive from Williams's continued protestations that insufficient evidence existed to convict him, despite the compelling evidence of his guilt. Williams, however, fails to demonstrate any prejudice from counsel's purported errors.

In a series of conclusory, repetitive, and factually contradictory claims, Williams argues that the victim provided inconsistent information about being raped and sodomized, and

---

[11] This section contains the majority of Williams's claims. Specifically, in this section, the Court addresses Claims One, Three through Eleven, Thirteen, Fourteen, Sixteen through Twenty, Twenty-Two, Twenty-Five through Twenty-Seven, and Twenty-Nine.

that certain records and witness testimony would highlight those inconsistencies. For example, Williams takes issue with the timeliness of the hospital's production of the victim's medical records and faults counsel for failing to provide Williams with copies of the victim's records to "inspect." (See Claims Five, Six, and Seven.) Williams believes that the hospital records, if introduced into evidence, would have impeached the victim's statement to police and testimony during the preliminary hearing because they stated "Alleged Sexual Assault." (See, e.g., Br. Supp. § 2254 Pet. 6; Claims One, Five, Eight, Ten, Nineteen, and Twenty-Nine.)

In a similar vein, in Claims Four and Seventeen, Williams argues that counsel failed to obtain and introduce into evidence the victim's and Williams's cellular phone records which would have purportedly demonstrated that "he was texting on his cell phone at the times the alleged victim stated he had allegedly raped her" (Br. Supp. § 2254 Pet. 11) and "was not at the alleged victim's residence . . . and that he was actually texting the alleged victim . . . ." (Id. at 25-26.)[12]

In Claim Six, Williams contends that counsel failed to interview and subpoena certain defense witnesses, including his

---

[12] Williams eventually admitted to the police that he had engaged in sexual activity with the victim, so it is difficult to fathom how this later contradictory assertion alongside any phone records could prove exculpatory.

mother, Hazel Williams, the victim's boyfriend, D.G. (id. at 4), the triage nurse, the sexual assault examination nurse, the emergency room physician (id. at 10), and the investigator who took the victim's statement at the hospital (id. at 10, 12). Williams fails to proffer what favorable testimony his mother or the victim's boyfriend would provide.   See Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of habeas action appropriate where it "stated only bald legal conclusions with no supporting factual allegations"); see United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (requiring "concrete evidence" of exculpatory testimony).

With respect to the medical witnesses, Williams argues that because the victim's medical records state "alleged sexual assault" and "suspects no abuse or neglect," the medical witnesses would have undermined the victim's statements about the attack. (See, e.g., Br. Supp. § 2254 Pet. 11.)

In Claim Fourteen, Williams also faults counsel for failing to investigate the criminal histories of the victim and the father of her child "to check both their credibility and to inform his client of their background credibility." (Id. at 8.)

Williams also blames counsel for purported procedural errors such as failing to provide him with the jury instructions for the rape and forcible sodomy charges before advising Williams's to plead guilty (Claim Eighteen), failing to move for

an evidentiary hearing (Claim Twenty-Six), and failing to move for summary judgment (Claim Twenty-Seven) and a motion for "perjury" (Claim Nineteen) based on the Commonwealth's failure to produce the medical records during the guilty plea hearing.

No need exists for the Court to address Williams's abundant individual critiques of counsel which undoubtedly lack merit, as Williams demonstrates no prejudice from counsel's purported errors. Williams fails to demonstrate that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Compelling evidence existed that Williams raped and forcibly sodomized the victim. First, the victim provided a detailed statement to police after her arrival at the hospital, describing how Williams forced her to engage in oral, vaginal, and anal sex against her will. Second, contrary to Williams's suggestion in his brief, the victim's account of the attack is corroborated by her medical records, her actions, and her demeanor after the rape. The victim stated that Williams raped her at approximately 3:00 p.m. (Br. Supp. § 2254 Pet. Ex. 15, at 1.) After calling L.E. crying and admitting to him that Williams raped her, she went to the hospital where the triage and sexual assault nurses and a physician examined her and performed a PERK rape test. (Id. at 2.) Police received a call

26

from the hospital at approximately 4:40 p.m. reporting a rape. (Id. at 1.)  Moreover, the PERK test confirmed the presence of Williams's DNA in the victim's vagina.

Williams also offers no plausible defense strategy that counsel omitted.  The inchoate defenses Williams offers lack factual consistency.  Williams attacks counsel for failing to obtain and utilize the victim's medical records and cellular phone records to challenge the contents of victim's statement to police.  Williams, however, provides no persuasive argument that evidence existed to support his continued protestations of his innocence.  First, the victim's medical records are not inconsistent with the victim's statement.  The records establish that she expeditiously reported to the hospital after the rape, appeared visibly upset, and reported vaginal and rectal penetration and rectal pain.  Additionally, Williams fails to square his contention that the phone records would demonstrate that he was not present at the victim's home at the time of the rape with the DNA test confirming that Williams's sperm was found on the victim on the day of the attack.

Finally, although Williams never explicitly makes the argument, the Court infers that Williams intends to argue that the medical records would show that his sexual encounter with the victim was consensual.  Williams points to no concrete evidence to support this insinuation and the record provides no

27

basis for the argument that Williams and the victim engaged in consensual sex.   Contrary to Williams's suggestion, the records fail to support his contention that he and the victim engaged in consensual sex.[13]

Next, neither Williams, nor the record, suggest a motive for the victim to lie about the rape and two counts of forcible sodomy.[14]   Williams offers no concrete evidence that he could have introduced to challenge the victim's account of the attack. See Sanders, 373 U.S. at 19 (1963); see Terry, 366 F.3d at 316.

Williams also cannot demonstrate that a reasonable defendant in his position would have pleaded not guilty and insisted on going to trial.   Hill, 474 U.S. at 59.   The Commonwealth charged Williams with rape and two counts of forcible sodomy and Williams faced a sentence of life in prison on each of those counts if he went to trial.   Williams had

---

[13] The medical records do not definitively show a finding of forcible intercourse, but they reflect a report of force by the victim against her person, and nothing inconsistent with that report exists in the record.   Moreover, the circumstantial and contemporaneous evidence demonstrates that Evans forcibly sodomized and raped the victim.

[14] Williams speculates that the victim's child's father, L.E., who the victim no longer dated at the time of the attack, had a history of being jealous of "other guys being with the alleged victim." (Br. Supp. § 2254 Pet. 8.)   Williams claims that L.E. has made false 911 calls regarding the victim and her home.   (Id.)   Even presuming these allegations to be true, Williams, however, fails to explain and the Court fails to discern how L.E.'s jealousy would cause the victim to report to the hospital and provide false information to police.

previously been convicted of six prior felonies, including a conviction for rape and forcible sodomy. The Commonwealth possessed the victim's detailed statement that Williams raped and sodomized her and DNA evidence confirming her statement. By entering into the guilty plea to the reduced charges of aggravated sexual assault, the Commonwealth agreed to cap Williams's sentence to a total active term of fifteen years imprisonment. Had Williams not pled guilty, his conviction for rape and forcible sodomy likely was inevitable, and Williams would have been sentenced to life in prison.[15]

In light of the overwhelming evidence of his guilt of rape and two counts forcible sodomy and the benefits he received from entering the Alford plea, Williams cannot show that a reasonable defendant in his position would have insisted on proceeding to trial. Accordingly, Williams fails to demonstrate prejudice from counsel's actions, and Claims One, Three through Eleven, Fourteen, Sixteen through Twenty, Twenty-Five through Twenty-Seven, and Twenty-Nine will be dismissed.

In Claims Thirteen and Twenty-Two, Williams faults counsel for not objecting to a purported speedy trial violation that

---

[15] Section 18.2-67.5:3 of the Virginia Code mandates a sentence of life in prison after a second or subsequent conviction of rape or forcible sodomy. Va. Code Ann. § 18.2-67.5:3(A)-(B).

occurred when counsel moved to continue the July 7, 2010 trial date.[16] In support of his claims, Williams states:

_____

[16] Williams contends that the convictions violated his speedy trial rights under the Virginia Code, the Virginia Constitution and Sixth Amendment. (See Br. Supp. § 2254 Pet. 19.)

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

Article I, Section 8 of the Virginia Constitution provides: "That in criminal prosecutions a man . . . shall enjoy the right to a speedy and public trial . . . ." Va. Const. Art 1, § 8.

Section 19.2-243 of the Virginia Code provides:

Where a district court has found that there is probable cause to believe that an adult has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the district court; and if the accused is not held in custody but has been recognized for his appearance in the circuit court to answer for such offense, he shall be forever discharged from prosecution therefor if no trial is commenced in the circuit court within nine months from the date such probable cause was found.

If there was no preliminary hearing in the district court, or if such preliminary hearing was waived by the accused, the commencement of the running of the five and nine months periods, respectively, set forth in this section, shall be from the date an indictment or presentment is found against the accused.

If an indictment or presentment is found against the accused but he has not been arrested for the offense charged therein, the five and nine months periods, respectively, shall commence to run from the date of his arrest thereon.

Va. Code Ann. § 19.2-243 (West 2013). However, "[t]he provision of this section shall not apply to such period of time as the failure to try the accused was caused: . . . (4) By continuance granted on the motion of the accused or his counsel . . . ." Id. § 19.2-243(4).

> [T]he Commonwealth issued out a Subpoena Duces Tecum
> to Centra Southside Community Hospital on September
> 25, 2009 for the production of the alleged victim's
> medical records for her visit to the emergency room on
> September 8, 2009.  The medical records were not
> produced in a timely manner which the defendant's
> counsel continued both the July 7, 2010 and the
> September 10, 2010 jury trials.  Petitioner states
> that because of ineffective assistance of counsel, his
> counsel did not dispute at the docket hearing,
> September 21, 2010, that both continuances should not
> be charged to the defense for speedy trial purposes
> because it was the discovery issue and not the defense
> issue in not getting the alleged victim's medical
> records . . . .

(Br. Supp. § 2254 Pet. 7.)   The Court fails to discern any
deficiency of counsel or resulting prejudice to Williams.

Neither Williams nor the record clearly indicate the date
on which the speedy trial clock began to run under the Virginia
statute.[17]   Williams seemingly argues that the two defense
requested continuances of the July 7, 2010 trial date placed the
trial outside of the Virginia speedy trial statute.   Because
Williams focuses his speedy trial violation arguments on the two

---

[17] A magistrate found probable cause to arrest Williams on
September 9, 2009 and police arrested Williams the same day.
Warrant of Arrest-Felony at 1, Commonwealth v. Williams,
Nos. CR10000177-00 through CR10000179-00 (Va. Cir. Ct. filed
March 30, 2010).   On March 29, 2010, Williams appeared before
the General District Court judge who heard the evidence and
ordered the case certified to the grand jury "having found
probable cause to believe that [Williams] committed the felony
charged in this warrant." Id. at 2.   The grand jury indicted
Williams on April 20, 2010 and the Court set the trial date for
July 7, 2010.   Thus, it appears that the speedy trial clock
began to run under Virginia law on either March 29, 2010 or
April 20, 2010, and the July 7, 2010 trial date fell within the
five-month speedy trial period.

31

continuances of the July 7, 2010 trial date, the Court limits its discussion to the continuances.

By Order entered May 19, 2010, the Circuit Court set Williams's trial date for July 7, 2010. Commonwealth v. Williams, Nos. CR10000177-00 through CR10000179-00, at 1 (Va. Cir. Ct. May 19, 2010). In that Order, signed by Williams, Williams agreed that he fully understood his speedy trial rights and "fully understands that a motion by the defendant or attorney for the defendant or a motion for a continuance agreed to by the defendant or attorney for the defendant constitutes a waiver of his speedy trial rights" under "the United States Constitution, the Virginia Constitution and Va. Code Section 19.2-243 . . . ." Id. The record demonstrates that on July 7, 2010, counsel for Williams filed a Motion to Continue because the hospital had not provided the subpoenaed medical records and counsel believed the records "may be exculpatory in nature and aid the defense." Motion to Continue at 1, Commonwealth v. Williams, Nos. CR10000177-00 through CR10000179-00 (Va. Cir. Ct. filed July 6, 2010). Williams agreed in open court that he understood the motion and had no questions for the court. (July 7, 2010 Tr. 3.) The Commonwealth lodged no objection and the Court continued the trial until September 10, 2010. Commonwealth v. Williams, Nos. CR10000177-00 through CR10000179-00, at 1 (Va. Cir. Ct. July 7, 2010). Williams signed the Order

granting the motion and again agreed that any defense continuance motion waived his speedy trial rights. Id.

On September 1, 2010, counsel again moved to continue Williams's trial date because the subpoenaed medical records had not been produced. Motion to Continue at 1, Commonwealth v. Williams, Nos. CR10000177-00 through CR10000179-00 (Va. Cir. Ct. filed Sept. 1, 2010). The Circuit Court granted the motion and continued the trial until September 21, 2010. Commonwealth v. Williams, Nos. CR10000177-00 through CR10000179-00, at 1 (Va. Cir. Ct. Sept. 2, 2010). Williams signed the Order granting the motion and again agreed that any defense continuance motion waived his speedy trial rights. Id.

On the limited record, the Court fails to discern any deficiency of counsel for not arguing that a speedy trial violation occurred under Virginia law. First, Williams agreed in writing, three times, that any defense continuance would waive his speedy trial rights. Second, under Virginia law, defense continuances stop the running of the speedy trial clock. Va Code. Ann. § 19.2-243(4) (West 2013). Thus, counsel reasonably eschewed arguing that the defense continuances should be counted in the speedy trial calculation and thus, a speedy trial violation occurred.

Williams demonstrates no prejudice from counsel's actions. In light of Virginia law and Williams's affirmance of his

33

understanding that defense continuances constituted a waiver of his speedy trial rights, Williams cannot demonstrate that, but for counsel's purported error, the Circuit Court would have continued to run the speedy trial clock in light of the defense continuance motions.

Williams also fails to state a claim of ineffective assistance based on the Sixth Amendment speedy trial right. The Court considers four factors in analyzing a Sixth Amendment speedy trial claim: "(1) the length of the delay; (2) the reason for the delay;" (3) the defendant's diligence in asserting the speedy trial right; and (4) any prejudice to the defendant resulting from the delay. United States v. Thomas, 305 F. App'x 960, 963 (4th Cir. 2009) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). Counsel reasonably eschewed making a speedy trial motion as none of these factors tip in Williams's favor.

First, the delay Williams complains of here was around five months, and that alone fails to trigger the other factors enumerated in Barker. Thomas, 305 F. App'x at 963-64 (citing United States v. MacDonald, 635 F.2d 1115, 1117 (4th Cir. 1980) for the proposition that an eleven-month delay was "entirely too short to 'trigger' further inquiry under Barker"). Even considering the other factors, Williams demonstrates no speedy trial violation as the delay was caused by two defense

34

continuances agreed to by the parties, Williams failed to promptly complain about the delay, and Williams demonstrates no prejudice from the delay. Thus, Williams fails to demonstrate prejudice from counsel's failure to raise a Sixth Amendment challenge. Claims Thirteen and Twenty-Two lack merit and will be dismissed.

C.   **Alford** **Plea Proceedings**

In a related series of claims, Williams faults counsel for various purported deficiencies during the Alford plea hearing based upon Williams's assertion that counsel deficiently advised him to plead guilty when the Commonwealth lacked sufficient evidence to convict him. For example, Williams argues that counsel failed to object to the Commonwealth's proffer of evidence as contradictory to the victim's statements (Claim Two), failed to object because the Commonwealth lacked the appropriate expert for admission of the DNA evidence (Claim Twenty-Three) and failed to object because the Commonwealth lacked the victim's entire medical record (Claim Fifteen). The Supreme Court of Virginia dismissed these claims because Williams failed to demonstrate any prejudice. Williams v. Dir. of the Dep't of Corr., No. 121042, at 3-4, 7-10 (Va. Jan 11,

2013.)[18]   The Supreme Court of Virginia's rejection of Williams's claims was not unreasonable.   See 28 U.S.C. § 2254(d)(1)-(2).

Williams fails to demonstrate that, but for any purported deficiency of counsel, he would have pleaded not guilty and insisted on going to trial.   Prior to the Alford plea hearing, Williams signed a stipulation of facts that the Commonwealth read during the plea hearing.   In the stipulation, Williams agreed that he unlawfully touched the victim, against her will, and caused her serious mental injury.   Stipulation at 1, Williams v. Commonwealth, CR10000178-00 & CR10000179-00 (Va. Cir. Ct. filed Dec. 7, 2010); (Dec. 7, 2010 Tr. 17-18).   For Williams's Alford plea, the Commonwealth needed only to put forth evidence sufficient to support the charges of aggravated sexual assault.   The Commonwealth's factual basis for the Williams's Alford plea based upon the victim's statement, the medical records demonstrating that the victim reported vaginal and rectal penetration and rectal pain, and the DNA evidence, provided sufficient evidence for the aggravated sexual assault charges.   Moreover, the evidence the Commonwealth possessed for trial would have sufficiently demonstrated that Williams raped and forcibly sodomized the victim.

---

[18] The Supreme Court also found no deficiency of counsel for these claims.

During the plea hearing, Williams heard the Commonwealth's factual basis for the plea and lodged no objection. Instead, he agreed that he understood that by pleading guilty he gave up any defenses to the charges, and he agreed that the evidence was sufficient to prove his guilt of two counts of aggravated sexual battery. (Dec. 7, 2010 Tr. 22-23.) In light of the compelling evidence of Williams's guilt, the significant benefits of the Alford plea agreement, and his statements under oath affirming that he was indeed guilty of the charges, Williams fails to demonstrate that, but for counsel's purported errors, a reasonable probability exists that he would have not entered into the Alford plea and insisted on proceeding to trial.

Williams also claims that counsel failed to move to withdraw Williams's Alford plea in light of the Commonwealth's failure to proffer sufficient evidence (Claim Twelve) and despite the "exculpatory" nature of the victim's medical records (Claim Twenty-Four). (See Br. Supp. § 2254 Pet. 24, 33.) As the Supreme Court of Virginia reasonably determined, Williams demonstrates no deficiency of counsel or prejudice. Williams, No. 121042, at 7-8, 14.

First, Williams fails to provide, and the Court fails to discern, any basis for counsel to move to withdraw Williams's validly entered Alford plea. As discussed in Part VI.A infra, under the Alford plea, Williams maintained his innocence, but

37

decided to plead guilty for reasons of self-interest. See United States v. Taylor, 659 F.3d 339, 347 (4th Cir. 2011) (citing North Carolina v. Alford, 400 U.S. 25, 37 (1970)). By entering into the Alford plea, Williams waived his right to challenge the sufficiency of the Commonwealth's evidence, gave up any defenses to the charges, and agreed that the evidence was sufficient to prove his guilt of two counts of aggravated sexual battery. (Dec. 7, 2010 Tr. 22-23); see Part VI.A. Thus, counsel reasonably eschewed moving to withdraw Williams's plea.

Williams also demonstrates no prejudice from counsel's failure to withdraw the plea. If counsel had successfully withdrawn the Alford plea, the Commonwealth would have gone forward with the trial on the rape and forcible sodomy charges. Based on the evidence, the Commonwealth would have had little difficulty obtaining a conviction on at least one of those counts. By going to trial, Williams would also lose the benefit of the Commonwealth's agreement to cap his sentence at fifteen years and thus, would face a sentence of life in prison. Williams fails to establish that a reasonable defendant in his position would have pleaded not guilty and insisted on going to trial.

Claims Two, Twelve, Fifteen, Twenty-Three, Twenty-Four lack merit and will be dismissed.

### D.   Appeal Claim

In Claim Twenty-One, Williams contends that trial counsel failed to file an appeal after Williams's instructed him to do so.   In rejecting this claim, the Supreme Court of Virginia explained that:

> [c]ounsel moved to withdraw, was permitted to do so, and new counsel was appointed.   [Williams's] newly appointed counsel noted an appeal on petitioner's behalf.
>   The      Court      holds      that      [Williams's] claim . . . satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.   Counsel properly moved to withdraw and new counsel was appointed to ensure [Williams] was not deprived of his right to appeal.   Thus, [Williams] has failed to demonstrate that counsel's performance was deficient or that there is a reasonably probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Williams, No. 121042, at 12.   The Court discerns no unreasonable application of the law or an unreasonable determination of the facts.   See 28 U.S.C. § 2254(d)(1)-(2).   Williams fails to establish any deficiency or prejudice as trial counsel properly withdrew and the Circuit Court appointed new counsel to represent Williams on appeal.   Claim Twenty-One lacks merit and will be dismissed.

### E.   Cumulative Ineffective Assistance

In a vague and conclusory claim (Claim Twenty-Eight), Williams suggests that the cumulative errors made by counsel deprived Williams of the ineffective assistance of counsel.   In

39

support of his claim, Williams states:  "Petitioner contends his court appointed [sic] counsel so utterly failed to defend against the primary charges that the trial on December 7, 2010 was the functional equivalent of a guilty plea/Alford plea, rendering counsel's representation presumptively inadequate." (Br. Supp. § 2254 Pet. 40.)  Williams misstates the procedural history and counsel's role at the Alford plea proceedings.  On December 7, 2010, Williams entered his Alford plea to the two charges of aggravated sexual assault; therefore, the Circuit Court held no trial.  The Court fails to discern why Williams believes counsel was required to "defend against primary charges" in light of Williams's decision to plead guilty.

To the extent Williams intends to argue that counsel's cumulative errors prejudiced him, Williams's claim lacks merit. In light of the compelling evidence of his guilt of rape and forcible sodomy, his likelihood of conviction on those counts, and his exposure to a sentence of life in prison, combined with the beneficial terms of the plea agreement, Williams cannot demonstrate that a reasonable defendant in his position would have pled not guilty and insisted on going to trial.  Claim Twenty-Eight will be dismissed.

## VI.  SUBSTANTIVE CLAIMS

In Claims Thirty through Thirty-Eight, Williams argues that certain defects occurred in the criminal process leading up to the entry of his Alford plea.

### A.  Claims Barred By Validly Entered Plea

The majority of Williams's substantive claims are, in essence, a challenge to the sufficiency of the evidence (Claims Thirty-Three and Thirty-Eight), including the sufficiency of evidence to support the grand jury indictment (Claim Thirty-Four), and a challenge to the validity of his Alford plea (Claims Thirty-One and Thirty-Five).  Williams also argues that the Commonwealth violated his speedy trial rights. (Claim Thirty-Two.)

The Supreme Court of Virginia found these claims "[were] barred because a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea. See Peyton v. King, 210 Va. 194, 196-97, 169 S.E.2d 569, 571 (1969)." Williams v. Dir. of the Dep't of Corr., No. 121042, at 3 (Va. Jan. 11, 2013.)  The Court discerns no unreasonable application of the law or an unreasonable determination of the facts in the Supreme Court of Virginia's rejection of these claims.  See 28 U.S.C. § 2254(d)(1)-(2).

"An Alford plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-

interest." United States v. Taylor, 659 F.3d 339, 347 (4th Cir. 2011) (citing North Carolina v. Alford, 400 U.S. 25, 37 (1970)). The "distinguishing feature" of an Alford plea is "that the defendant does not confirm the factual basis underlying his plea[.]" Id. (citation omitted) (internal quotation marks omitted). "[A]n Alford plea is an intentional, specific action which serves a distinct function in the law, namely that of ensuring that a defendant's 'protestations of innocence' do not undermine confidence that the constitutional requirement that a plea of guilty be voluntary and intelligent has been satisfied." Id. (citing Alford, 400 U.S. at 33, 37-39).

"[C]ourts treat Alford pleas as having the same preclusive effect as a guilty plea." Perry v. Commonwealth, 533 S.E.2d 651, 652 (Va. Ct. App. 2000) (quoting Cortese v. Black, 838 F. Supp. 485, 492 (D. Colo. 1993)). Thus, "'by freely and intelligently entering an Alford plea,' [Williams] 'waived his right to appeal the issue of whether the evidence was sufficient to prove beyond a reasonable doubt that he was guilty of that charge.'" Price v. Johnson, 218 F. App'x 274, 275 (4th Cir. 2007) (quoting Perry, 533 S.E.2d at 652-53)). Moreover, "'[a] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges.'" United States v. Martinez, 424 F. App'x 208, 209

(4th Cir. 2011)(quoting <u>United States v. Willis</u>, 992 F.2d 489, 490 (4th Cir. 1993)); <u>accord</u> <u>Peyton</u>, 169 S.E.2d at 571.

Here, the Circuit Court thoroughly questioned Williams to ensure that Williams's <u>Alford</u> plea was freely, knowingly, and voluntarily made. <u>See</u> <u>supra</u> Part IV.A. Accordingly, Williams's claim challenging the validity of his plea and the appellate waiver (Claim Thirty-Five) is foreclosed from review by his statements under oath. Williams's claims challenging the sufficiency of the Commonwealth's evidence (Claims Thirty-Three, Thirty-Four, and Thirty-Eight) and nonjurisdictional defects such as the purported speedy trial violations (Claim Thirty-Two) are also waived by his validly entered plea. <u>See</u> <u>Price</u>, 218 F. App'x at 275; <u>Martinez</u>, 424 F. App'x at 209. Claims Thirty-Two, Thirty-Three, Thirty-Four, Thirty-Five, and Thirty-Eight will be dismissed.

## B.   Failure to Disclose Evidence

In Claim Thirty, Williams contends that the Commonwealth failed to disclose favorable evidence, in the form of the victim's medical records, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Specifically, Williams argues that he personally failed to receive the victim's medical records until after he entered his <u>Alford</u> plea. (Br. Supp. § 2254 Pet. 12-13, 17, 21, 38-39, 41-42.)

Brady and its progeny "require[ ] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011). In order to obtain relief under Brady a litigant must "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." Id. (citing Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003)). Under the Brady analysis, evidence is material if it generates a "'reasonable probability'" of a different result at trial had the evidence been disclosed. Moseley v. Branker, 550 F.3d 312, 318 (4th Cir. 2008) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). The Court recognizes that in the context of a guilty plea, Brady may have no applicability, see Loiseau v. Clarke, No. 3:12CV580, 2013 WL 3894001, at * 3 (E.D. Va. July 26, 2013) (citations omitted), however, the Court need not delve into that analysis because Williams's Brady claim lacks factual merit.

Centra Southside Community Hospital filed the victim's medical records with the Circuit Court on September 3, 2010. See Sealed Medical Records, Williams v. Commonwealth, CR10000178-00 & CR10000179-00 (Va. Cir. Ct. Sept. 3, 2010). Thus, counsel had access to the victim's medical records three months prior to Williams's December 7, 2010 trial date and the date upon which he entered into his Alford plea. Williams's Brady claim fails because he fails to demonstrate that the Commonwealth withheld exculpatory evidence from the defense.

Even if Williams could establish that the Commonwealth withheld evidence,[19] Williams cannot establish that this nondisclosure caused him to receive an unfair trial. Moseley, 550 F.3d at 318. First, as discussed previously, see supra Part IV.B, the victim's medical records support her statement that Williams raped and sodomized her; thus, Williams mischaracterizes the records as exculpatory. Second, compelling evidence demonstrated that Williams raped and sodomized the

---

[19] The record demonstrates that the hospital, not the Commonwealth, held the victim's medical records. Other than his unsupported allegation that the Commonwealth suppressed evidence, Williams alleges no involvement of the Commonwealth in the hospital's failure to timely comply with the subpoena. Moreover, while the state court record shows that the medical records were incomplete, it simultaneously indicates that Williams knew this when he pled guilty. (See Dec. 7, 2010 Tr. 31-32.) Williams alleges no facts suggesting the exculpatory nature of any missing information. Thus, Williams fails to advance facts that demonstrate his plea was involuntary or unknowing.

victim; yet, the Commonwealth allowed him to plead guilty to the lesser charges of aggravated sexual battery and avoid a life sentence. Claim Thirty lacks merit and will be dismissed.

### C.    Remaining Claims

Williams's remaining claims lack proper factual support, are entirely conclusory, and/or fail to allege a violation of the constitution.

In Claim Thirty-One, Williams contends that the Circuit Court judge expressed doubt about the entry of Williams's guilty plea when he stated: "he 'thinks' this is a reasonable deposition [sic] to accept the Alford Plea agreement finding the defendant guilty of both amended charges of aggravated sexual battery rather than saying he accepts the Alford Plea agreement finding the defendant guilty beyond a reasonable doubt of both amended charges." (Br. Supp. § 2254 Pet. 13.) Williams claims that the Circuit Court's statement "shows the honorable judge had some doubt in his verdict . . . ." (Id.) First, Williams fails to identify how the judge's statement implicates the constitution. Second, by pleading guilty, Williams waived the right to trial and a jury finding of his guilt beyond a reasonable doubt. As explained previously, the Circuit Court needed only to find a sufficient factual basis for Williams's plea. Claim Thirty-One will be dismissed.

In Claim Thirty-Six, Williams contends that the Commonwealth engaged in prosecutorial misconduct by knowingly presenting false testimony in presenting the factual basis for the plea. (Br. Supp. § 2254 Pet. 21, 38.) Essentially, Williams faults the Commonwealth for "proffer[ing] false testimony to fit the amended charges . . . ." (Id. at 21; see id. at 38). In reciting the factual basis for the amended charges, the Commonwealth modified the victim's statement that Williams vaginally and anally penetrated her to instead provide a basis for the aggravated sexual battery charge. In support of the plea, the Commonwealth stated that Williams unlawfully touched the victim's genitalia and buttocks against her will. (See Dec. 7, 2010 Tr. 26-32.) While this factual basis for Williams's plea is undoubtedly altered from the victim's statement, the victim's statement that Williams vaginally and anally penetrated her certainly amounted to an unlawful touching against her will. Claim Thirty-Six lacks merit and will be dismissed.

Finally, in Claim Thirty-Seven, Williams faults the Circuit Court for failing to hold Centra Southside Community Hospital in contempt of court for failing to comply with the subpoena of the victim's medical records. Williams fails to identify how the Circuit Court's failure to hold the hospital in contempt of

court violates his constitutional rights.    Claim Thirty-Seven will be dismissed.

Additionally, to the extent Williams believes that the Court failed to frame his abundant claims in the exact manner as he presented in his Writ of Habeas Corpus Petition Grounds and Brief Document (ECF No. 1-1), the Court has carefully and thoroughly reviewed the record and finds Williams raises no meritorious claims.

## VII. CONCLUSION

Respondent's Motion to Dismiss (ECF No. 9) will be granted. Williams's claims are dismissed and the petition for a writ of habeas corpus will be denied.    Williams's Motion for Discovery (ECF No. 8) will be denied.[20]    The action will be dismissed.    A certificate of appealability will be denied.[21]

---

[20] A federal habeas petitioner must demonstrate good cause before he or she is allowed to conduct discovery.    Stephens v. Branker, 570 F.3d 198, 213 (4th Cir. 2009).    "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he [or she] is entitled to habeas corpus relief," once the facts are fully developed.    Id. (citing Bracy v. Gramley, 520 U.S. 899, 908-09 (1997)).    Williams fails to make such a showing.

[21] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").    28 U.S.C. § 2253(c)(1)(A).    A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."    28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that

48

The Clerk is directed to send copy of the Memorandum Opinion to Williams and counsel of record.

/s/   REP
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 19, 2014

the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Williams fails to make this showing.